J. JONES, Chief Justice,
specially concurring.
I fully concur in the Court’s opinion. It is hard to understand why Kelly was required by the Respondents to travel about 100 miles in winter driving conditions to undergo the IME, when the physician was going to be in her home town in a matter of weeks. Had it not been for this thoughtless directive, she would not have been injured in the collision.
Aside from the merits, this ease raises concerns about Industrial Commission procedures. Here, as in a number of other worker’s compensation cases that have recently come before the Court, the Commission peremptorily discarded the referee’s findings of fact, conclusions of law, and recommendation, providing absolutely no indication as to why it was doing so. The Commission merely said, “[t]he undersigned Commissioners have chosen not adopt the Referee’s recommendation and hereby issue their own findings of fact, conclusions of law and order.” Then, the referee’s recommended decision was not even included in the record on appeal. In my mind, this is shoddy administrative practice.
Just as a hearing officer does for other State agencies in administrative proceedings, a referee acts as the eyes and ears of the Commission. Both hearing officers and referees hear live testimony and make credibility determinations that play into their factual findings. This case is a little different because it was submitted on stipulated facts so there was no occasion for the referee to make observational credibility determinations. However, in administrative cases before other agencies that are heard by hearing officers, the record would not be complete without the hearing officer’s recommended decision. Neither should a case heard by the Commission under its own rules be considered complete if it does not include the referee’s recommended decision.
When this case was heard on oral argument before this Court, counsel were requested to augment the record with the referee’s recommended decision so that the Court could compare its analysis with that in the Commission’s order. The augmentation was made. It appears that both the recommended decision and the order turned on the interpretation of our decision in Kiger v. Idaho Corp., 85 Idaho 424, 380 P.2d 208 (1963). Neither the referee nor the Commission were correct in strictly applying Kiger. Where both did rely on Kiger to deny Kelly’s claim, one might wonder why the Commission felt it necessary to discard the referee’s *330 recommended decision. The primary difference between the two documents appears to be the manner in which Kelly’s plight was viewed.
In its order, the Commission observed:
Had [Kelly] refused to attend this exam, or had she otherwise frustrated the purposes of surety to obtain such an exam, she could have faced curtailment of workers compensation benefits and the suspension of proceedings before the Commission. It is argued that these facts warrant a different result than that which obtained in Kiger. However, we fail to see why this distinction should result in a different outcome, tempting though it may be. After all, rather than arrange an Idaho Code § 72-433 exam at a time and place more convenient to Claimant, surety arranged for an exam far removed from Claimant’s residence, at a time of year that would expose her to dangerous conditions while traveling. While Claimant could have petitioned the Industrial Commission for relief from the scheduled exam, and therefore cannot be said to have been without recourse, she failed, for whatever reason, to pursue this, and so suffered the injuries that she assuredly would not have suffered “but for” the Idaho Code § 72-433 exam.
Thus, the Commission appears to place the onus upon Kelly to rectify the unwise decision to send her about 100 miles on slick roads in order to get an exam that she could have gotten in her home town several weeks later.
The referee took a somewhat more sympathetic view:
Claimant’s argument can be read to suggest a limited exception to the Kiger decision for those instances where a claimant is going to or from an appointment whose location and time is set exclusively by the surety, with no input or negotiation from the claimant, and where, if the claimant does not attend the appointment, her workers’ compensation benefits will be suspended or terminated. This is an attractive argument under the present facts. It is easy to relate to Claimant’s plight, where she was required to attend an IME over one hundred miles from her home, when the same doctor would be conducting those examinations in her town the following month. Compounding the issue, the IME was scheduled for a time when snow was certainly possible, and in fact was falling, at least as of her return trip. All travelers on U.S. 95 on November 15, not just Claimant, were subjected to the same road conditions.
In-such a situation, it is hard not to sympathize with Claimant, and easy to assign the risk of Claimant’s travel to the surety.
Reading between the lines of the referee’s analysis, one might think that the referee was subliminally advocating an exception from the Kiger holding, somewhat along the lines of the Court’s decision.
Regardless of the Commission’s reasons for discarding the referee’s recommended decision, I believe it was incumbent upon the Commission to include the recommended decision in the record and to at least briefly explain why it was discarded. The failure to include the referee’s recommended decision was remedied by the courteous agreement of counsel for the parties to augment it into the record. The Commission should hereafter take it upon itself to ensure that a referee’s recommended decision is always included as part of the record on appeal. The Commission should also provide some discussion in future eases as to why it made a determination to discard the referee’s recommendation and issue its own findings of fact, conclusions of law, and order. This is particularly critical where there may be some difference between the facts found by the referee and those made by the Commission. Otherwise, this Court does not have a complete picture of the case upon which to base an informed decision on appeal.